[Civ. No. 7485.  Second Appellate District, Division One.—May 12, 1933.]

J. D. RYAN et al., Respondents, v. EVA M. VAWTER, Appellant.

Leonard J. Meyberg and Paul M. Joseph for Appellant.

Morris McLaughlin for Respondents.

DESMOND, J., *pro tem.*—This is an appeal taken by defendant from a judgment entered against her in the sum of $57,483.21 which the court found to be due plaintiffs as the net result of a transaction in which plaintiffs traded their ranch in Modoc County with certain personal property thereon for the Lady Ann Apartments and furniture therein located on South Rampart Boulevard, Los Angeles, property of the defendant.

Two actions were filed simultaneously by plaintiffs, husband and wife, the first claiming damages for deceit, the second damages under a warranty that furniture and other

personal property in the apartment house were unencumbered. Defendant answered the allegations of the first complaint under the number properly belonging to the second and *vice versa* as to the second complaint. In answering the first complaint, defendant set up a counterclaim charging fraud by plaintiffs and damages resulting therefrom. The actions were consolidated for trial, the court took a broad and general survey of the entire transaction and reached the result noted above by finding that, by reason of fraud practiced upon plaintiffs they were damaged in the sum of $64,000, but because of failure of plaintiffs to pay certain obligations which they had assumed in the amount of $6,516.79, the defendant should be credited with that amount making the net judgment against the defendant the sum first above noted.

After the trial closed and before findings were signed, the court permitted plaintiffs to file an "amended complaint to conform to the proof for damages for deceit". Defendant complains that findings based on the pleadings as amended are erroneous in various particulars, pointing out that the amended complaint does not conform to the proof, but as to certain items, goes beyond any proof. One of the important findings is that the defendant practiced fraud upon the plaintiffs by representing: first, that the monthly income from her apartment house, summer and winter, at the time of the transaction and previously, was $3,000; second, that the annual income was $36,000; third, that the actual value of the house, land and furniture was $325,000; fourth, that the expense of operating the property amounted to $2,100 per year, plus cost of insurance. The court, among other things, also determined, "that the representations as to the value of said apartment house herein specifically found to have been made were not made as an expression of opinion, but as a representation of fact"; that income for the month in which negotiations opened, November, 1927, was $2,600; that the exchange was made on December 27, 1927; that Mrs. Mason, agent for defendant, informed plaintiffs that income for November and December and for each and every month of the year 1927 was $3,000 per month; that the Modoc County land and ranch of the plaintiffs was worth approximately $250,000.

As a conclusion of law the court decided "that the plaintiffs were entitled to recover of and from the defendant, Eva M. Vawter, the sum of $57,483.21, the said sum representing the difference between the actual value of said apartment house land and furniture, to-wit: $88,100, and the value which said property would have had if the representations of the defendant were true, to-wit: the sum of $152,100, the sum of $6,516.79 being allowed to the defendant as and for the sums which the plaintiffs should have paid; . . . "

Commenting upon the findings above mentioned, we note that one of the plaintiffs, J. D. Ryan, testified that his agent, Mr. Gansneider, gave him certain information concerning the defendant's property as follows: " . . . who was present at that time? . . . I think Mr. Gansneider and myself. . . . All right; what was said by you and by him at that time? He told me about this apartment, and showed me a slip with the listing on it, stating how much it brought in a year, the taxes, and one thing and another, and the dimensions and size of the lot and I says 'Well, if it is bringing in that much money,' I says 'You will have to take care of the second mortgage.' He said, 'We will do it with that income.' . . . He (Gansneider) said it was bringing in 3000 a month, thirty-six thousand a year. That was gross income, did he say? Yes, sir. . . . He said Mrs. Vawter asked $325,000 for it, and if it was bringing that income in, according to what she says, he felt the value was about right, and I says 'Well, if it is bringing it in, I will make the deal, because I will get sufficient income to take care of the second mortgage, which they agreed to get.' So on that understanding, I went and looked at the property."

Mr. Gansneider did not appear as a witness nor was the slip to which reference was made in the above testimony offered as evidence. ■ The court, however, admitted over the objection of defendant a slip designated as exhibit 5, reading as follows:

"Lady Ann Apartments,
447 South Rampart Blvd., Los Angeles.
Five story brick building, Beauty Parlor in Basement.
Price $325,000
1st Mtg. $125,000—7½ years to run at 7% straight.
Trust Deed $17,000 payable $1000 per month. Interest 8%.

42 Singles, 6 Doubles, Lobby and basement.
Furnished.
Furniture Clear.
Lot 60x140, Lot worth $1000 per front foot.
Income summer and winter $3000 per month
Expenses except insurance $2100.00 per year.
Insurance $130,000.                    Du 0591.''

Mr. Frederick F. Mason, son of Mrs. Nellie Mason, defendant's agent in this transaction, testified that he copied the data upon this document from a listing which had been in his mother's possession but which was not produced at the trial. He stated that the original from which these entries were copied was signed by the defendant whose signature he recognized from having seen her handwriting elsewhere. Mrs. Mason had testified at an earlier date in the trial that so far as she knew no copy had been made of the listing which she had received from the defendant, and was not permitted to testify as to its contents. Later, when she was recalled to the stand after her son had testified, no effort was made to have her identify the typewritten entries made by him as a correct copy of her lost listing. No evidence was produced to show that Mr. Gansneider, agent for Mr. Ryan, or either of the plaintiffs ever saw this typewritten slip. We feel, therefore, that this document should not have been received as an exhibit and that its contents should have been disregarded. That it was not so disregarded, but, on the contrary, was considered as vitally important as a basis for one and perhaps the most important of the findings of the trial court, appears from the following statement made by the learned trial judge at the conclusion of the testimony:

''The Court: Relative to one finding that I think I should make at this time, to let counsel know how the court is going to find which is a determining feature in the matter, is the question of whether or not the representation relative to $3,000 was made *in accordance with that listing slip.*

''Mr. Meyberg: *By 'listing slip' you mean with reference to the—*

''The Court: *The annual amount of $3,000 a month or $36,000 per year;* relative to that, the court is going to find for the plaintiff on that, that it was made; the evidence preponderates in that particular.''

██   Nowhere in the record do we find a statement that the plaintiffs, or either of them, were told by the defendant or anyone representing her that the apartment house property was worth $325,000 or that the yearly expense aside from insurance was limited to $2,100 annually. Therefore, the amended complaint does not conform to the proof and should not have been ordered filed. As there was no proof of certain material allegations therein, so there was no ground for the findings relating thereto that the defendant practiced fraud upon the plaintiffs by representing that the actual value of the house, land and furniture was $325,000, and that the yearly operating expense was $2,100 aside from insurance charges.   ██   The further finding "that the representations as to the value of said *apartment house* herein specifically found to have been made were not made as an expression of opinion but as a representation of fact" must go by the board also, especially since nowhere in the findings is it specifically found that any representation was made as to the value of said apartment house considered separately and apart from its furniture and equipment. If it be considered that "apartment house" in this connection means the entire apartment house property, still the finding is not justified for the reason already mentioned, that there is no evidence showing the claimed misrepresentation as to a $325,000 value. Mr. J. D. Ryan, one of the plaintiffs, testified that the defendant told him about December 18 or 19, 1927, a week before the exchange was made that "the property isn't worth over $162,000".

██   The court in finding 5 determined, among other things, that the actual value of the property received by plaintiffs from defendant was $88,100. This finding was based upon the testimony of an expert appointed by the court to appraise the property and whose estimate was formed from a personal inspection of the property, considered as renting at the time of the transaction at $2,600 per month, which as has been noted, the court found to be the fact. This testimony reads as follows: "Case 3: assuming a gross income monthly, $2,600, being gross income yearly, $31,200, less 20 per cent vacancies, $6,240, stabilized yearly income, $24,960; yearly expenses, $19,674, leaving a net income from the land alone of $5,286, capitalized at 6 per cent, gives us a *land value* of $88,100." It will be observed

that this estimate does not include the value of the furniture of forty-eight apartments which plaintiffs received. The only testimony offered on the value of the furniture was given by this expert witness, as follows: "Now the furniture in my opinion is worth $24,750. I think I am conservative when I say that the depreciation which has accrued is at least 60 per cent, or $14,850; the difference between those two items gives us the present value of the furniture of $9,900." The testimony was given in May, 1929, approximately a year and a half after the exchange of the properties and what the value of the furniture was at that earlier time does not appear. It will be seen, however, that on the expert's testimony, the plaintiffs received real estate worth $88,100 and furniture worth $9,900, a total of $98,000.

Exhibit 1 entitled "Agreement for Exchange," which was signed by plaintiff J. D. Ryan on November 29, 1927, and later initialed at various points by him and the defendant, contains a statement that the Los Angeles property is subject to a first mortgage of $125,000 and a second of $17,000, a total encumbrance of $142,000. As we have observed, this plaintiff was advised by the defendant before the exchange was completed that her property was worth not more than $162,000, or $20,000 above the encumbrances. With this in mind, and notwithstanding the testimony of the expert appraiser, we cannot agree with the conclusion of the trial court that the plaintiffs should recover from the defendant (on the evidence as introduced) the sum of $64,000 minus credits due her, even though—and this is not clear—the value of the furniture may not have been included in the figure $162,000 quoted by the defendant.

It appears from the evidence that plaintiff J. D. Ryan, prior to the time he made this trade, was familiar with the apartment house business, having owned and operated four or five apartment houses in the city of Los Angeles, that he was furnished by defendant with a report on the various apartments in the Lady Ann Apartments showing vacancies, tenants and rates charged, from which he might have determined for himself the current income, or made any investigation that seemed advisable, that he did not insist on examining the books of the business, although they were in existence and were shown to him in the apartment house, that he made no inquiry of the defendant or anyone else

concerning expenses, the defendant testifying without contradiction: "I started to go into the expense and he said he knew about the expense, he had run apartment houses before."

Under the circumstances, we feel that no injustice will be done the plaintiffs if this case is placed in position to be tried anew, action which we deem necessary because of errors hereinbefore noted in the admission of evidence and findings on material matters which are not supported by or which are in direct conflict with the evidence. (2 Cal. Jur. 1028; 24 Cal. Jur. 990.)

The judgment is reversed and new trial ordered.

Houser, Acting P. J., and York, J., concurred.